LATHAM & WATKINS LLP
Melanie M. Blunschi (Bar No. 234264)
 melanie.blunschi@lw.com
Kristin Sheffield-Whitehead (Bar No. 304635)
 kristin.whitehead@lw.com
Dianne Kim (Bar No. 348367)
 dianne.kim@lw.com
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice*)
 maggie.upshaw@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

*Attorneys for Defendant*
*Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| LISA TSERING and DOMINIQUE DAVIS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC., fka FACEBOOK, INC.,<br><br>Defendant. | Case No. 3:25-cv-01611-RFL<br><br>**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing: November 18, 2025<br>Time:   10:00 a.m.<br>Location: Courtroom 15—18th Floor<br>Judge: Hon. Rita F. Lin |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on November 18, 2025 at 10:00 a.m., before the Honorable Rita F. Lin, United States District Court, Courtroom 15, 18th Floor, 450 Golden Gate Ave., San Francisco, California, Defendant Meta Platforms, Inc. ("Meta") will and hereby does move for an order dismissing Plaintiffs Lisa Tsering and Dominique Davis's ("Plaintiffs'") Second Amended Class Action Complaint (Dkt. 28) for failure to state a claim under Rule 12(b)(6). This motion is based on this notice of motion; the memorandum of points and authorities in support thereof that follows; the request for judicial notice and accompanying declaration; the pleadings, records, and papers on file in this action; oral argument; and any other matters properly before the Court.

## STATEMENT OF ISSUE TO BE DECIDED

Whether the Court should dismiss the Second Amended Class Action Complaint for failure to state any claim upon which relief can be granted under Rule 12(b)(6).

Dated: August 12, 2025

Respectfully submitted,

LATHAM & WATKINS LLP

By */s/ Melanie M. Blunschi*
   Melanie M. Blunschi (Bar No. 234264)
    *melanie.blunschi@lw.com*
   Kristin Sheffield-Whitehead (Bar No. 304635)
    *kristin.whitehead@lw.com*
   Dianne Kim (Bar No. 348367)
    *dianne.kim@lw.com*
   505 Montgomery St., Suite 2000
   San Francisco, CA 94111
   Telephone: +1.415.391.0600

   Margaret A. Upshaw (*pro hac vice*)
    *maggie.upshaw@lw.com*
   555 Eleventh Street, NW, Suite 1000
   Washington, D.C. 20004-1304
   Telephone: +1.202.637.2200

   *Attorneys for Defendant*
   *Meta Platforms, Inc.*

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................... 1

II.   BACKGROUND ............................................................................................................. 2

    A.    Meta's SDKs ....................................................................................................... 2

    B.    Meta's Terms Governing Developers' Use Of Its SDKs.................................... 3

    C.    MobilityWare and Nextdoor's Privacy Policies ................................................ 3

    D.    This Lawsuit........................................................................................................ 4

III.  LEGAL STANDARD...................................................................................................... 5

IV.   ARGUMENT .................................................................................................................. 5

    A.    Plaintiffs' Conclusory Allegations Do Not Plausibly Allege Their Precise Geolocation Data Was Improperly Sent To Meta Without Their Consent ................................................................................................................ 5

    B.    Plaintiffs' Claims All Fail Because App Developers, Not Meta, Install The SDK ............................................................................................................. 9

    C.    Plaintiffs' Claims All Fail For Additional Reasons .......................................... 10

        1.    Plaintiffs Do Not State A Pen-Register Claim...................................... 11

        2.    Plaintiffs Do Not State A Claim Under CDAFA................................... 12

        3.    Plaintiffs Do Not State An Invasion of Privacy Claim.......................... 14

        4.    Plaintiffs' Unjust Enrichment Claim Fails............................................ 15

V.    CONCLUSION............................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adams v. Johnson*,
355 F.3d 1179 (9th Cir. 2004) ...............................................................................................5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................................6, 7, 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................................5

*Belluomini v. Citigroup Inc.*,
2013 WL 5645168 (N.D. Cal. Oct. 16, 2013)..................................................................14

*Brand v. KSF Acquisition Corp.*,
2023 WL 3225409 (S.D. Cal. Mar. 17, 2023) .................................................................15

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ...............................................................................7

*Bui-Ford v. Tesla*,
2024 WL 694485 (N.D. Cal. Feb. 20, 2024) ...................................................................14

*Celgard, LLC v. Shenzhen Sr. Tech. Material Co. Ltd. (US) Res. Inst.*,
2020 WL 7392909 (N.D. Cal. July 23, 2020).............................................................7

*Claridge v. RockYou, Inc.*,
785 F. Supp. 2d 855 (N.D. Cal. 2011) .....................................................................10, 12

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023).............................................................................6

*CTI III, LLC v. Devine*,
2022 WL 1693508 (E.D. Cal. May 26, 2022) ...................................................................9

*Davis v. Fresno Unified Sch. Dist.*,
14 Cal. 5th 671 (2023) ....................................................................................................11

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ..................................................................9, 10, 15

*Durell v. Sharp Healthcare*,
183 Cal. App. 4th 1350 (2010) .......................................................................................15

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ...........................................................................14

*Hammerling v. Google, LLC,*
2024 WL 937247 (9th Cir. Mar. 5, 2024)................................................................................7

*Heeger v. Facebook, Inc.,*
509 F. Supp. 3d 1182 (N.D. Cal. 2020) .................................................................................8

*Heiting v. Taro Pharms. USA, Inc.,*
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ...............................................................................13

*Hernandez v. Hillsides, Inc.,*
47 Cal. 4th 272 (2009) ......................................................................................................9, 14

*Hubbard v. Google LLC,*
2024 WL 3302066 (N.D. Cal. July 1, 2024).........................................................................15

*In re Facebook, Inc. Internet Tracking Litigation,*
956 F.3d 589 (9th Cir. 2020) ...............................................................................................13

*In re Google Assistant Priv. Litig.,*
457 F. Supp. 3d 797 (N.D. Cal. 2020)..................................................................................15

*In re iPhone Application Litig.,*
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...............................................................................14

*In re Vizio, Inc., Consumer Priv. Litig.,*
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ............................................................................6, 8

*Kishnani v. Royal Caribbean Cruises Ltd.,*
2025 WL 1745726 (N.D. Cal. June 24, 2025)....................................................................9, 12

*Lau v. Gen Digit. Inc.,*
2024 WL 1880161 (N.D. Cal. Apr. 3, 2024).........................................................................15

*Marcus v. Nationstar Mortg. LLC,*
2022 WL 1486831 (9th Cir. May 11, 2022) ...........................................................................7

*Marden v. LMND Med. Grp., Inc.,*
2024 WL 4448684 (N.D. Cal. July 3, 2024).......................................................................9, 15

*McGowan v. Weinstein,*
505 F. Supp. 3d 1000 (C.D. Cal. 2020) ...............................................................................14

*Murphy v. Olly Pub. Benefit Corp.,*
651 F. Supp. 3d 1111 (N.D. Cal. 2023) .................................................................................8

*New Mexico ex rel. Balderas v. Google, LLC,*
489 F. Supp. 3d 1254 (D.N.M. 2020) ....................................................................................8

*People v. Hyatt,*
109 Cal. App. 5th 735 (2025) ................................................................................................9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

META'S MOT. TO DISMISS
SECOND AMEND. CLASS ACTION COMPL.
CASE NO. 3:25-cv-01611-RFL

*Pratt v. Higgins*,
2023 WL 4564551 (N.D. Cal. July 17, 2023)......................................................................13

*Russell v. Walmart, Inc.*,
680 F. Supp. 3d 1130 (N.D. Cal. 2023) ..............................................................................15

*Segen v. Rickey*,
2008 WL 590505 (N.D. Cal. Feb. 29, 2008) ......................................................................10

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) .........................................................................13, 15

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) ......................................................................10, 11, 12

*Simon v. E. Ky. Welfare Rts. Org.*,
426 U.S. 26 (1976)..................................................................................................................8

*Smith v. Rack Room Shoes*,
2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) .....................................................................13

*Smith v. Rack Room Shoes*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ......................................................................14

*Sprewell v. Golden State Warriors*,
266 F.3d 979, *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) ..........................8

*Stevens v. TD Bank, N.A.*,
2025 WL 1779164 (D.N.J. June 27, 2025) ...........................................................................6

*Sunbelt Rentals, Inc. v. Victor*,
43 F. Supp. 3d 1026 (N.D. Cal. 2014) ..................................................................................9

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*,
315 F. Supp. 3d 1147 (C.D. Cal. 2018) ...............................................................................14

*U.S. Telecom. Ass'n v. F.C.C.*,
227 F.3d 450 (D.C. Cir. 2000).............................................................................................11

*Van Buren v. United States*,
593 U.S. 374 (2021)..............................................................................................................13

*Zimmerman v. L'Oreal USA, Inc.*,
2023 WL 4564552 (N.D. Cal. July 17, 2023).......................................................................9

**STATUTES**

Cal. Civ. Code § 3515................................................................................................................7

Cal. Penal Code § 502..........................................................................................................1, 7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

Cal. Penal Code § 502(c)(1)...................................................................................................9

Cal. Penal Code § 502(e)(1)............................................................................................12, 13

Cal. Penal Code § 502(e)(5)...................................................................................................3

Cal. Penal Code § 637.2.........................................................................................................7

Cal. Penal Code § 638.50.....................................................................................................11

Cal. Penal Code § 638.50(b)............................................................................................2, 12

Cal. Penal Code § 638.51.............................................................................................1, 9, 10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

v

META'S MOT. TO DISMISS
SECOND AMEND. CLASS ACTION COMPL.
CASE NO. 3:25-cv-01611-RFL

## I.    INTRODUCTION

Plaintiffs seek to expansively interpret California criminal statutes and other causes of action to manufacture liability against *Meta* based on *app developers'* routine use of source code ("Software Development Kits" or "SDKs") that Meta makes publicly available for developers to better understand and reach their users. Plaintiffs' complaint turns on the assertion that app developers used the Facebook Audience Network SDK to send Plaintiffs' precise geolocation data to Meta. Based on that assertion, Plaintiffs bring claims against Meta for (1) violation of California's statute prohibiting installation or use of "pen register[s]," Cal. Penal Code § 638.51; (2) violation of the California Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502; (3) invasion of privacy under the California Constitution; and (4) unjust enrichment. Plaintiffs' Second Amended Complaint ("SAC") (Dkt. 28) suffers from numerous defects and should be dismissed in full.

At the threshold, the SAC still lacks key factual allegations to support the basic premise of Plaintiffs' claims—that Meta improperly received their precise geolocation data through app developers' use of the Facebook Audience Network SDK. Meta pointed this problem out in its first motion to dismiss, *see* Dkt. 25; Plaintiffs amended their complaint, but failed to fix this fundamental defect. Plaintiffs again contend that they used "one or more phone applications which contained" one or more of Meta's SDKs. SAC ¶¶ 10, 21. But although Plaintiffs invoke "information and belief," *id.* ¶ 50, the SAC is still devoid of factual allegations that would support the assertion that any app sent "precise geolocation" data to Meta using code from the Facebook Audience Network SDK. *Id.* ¶ 34. In fact, Plaintiffs entirely *drop* their allegations about Candy Crush, the only app they initially named, and now focus on two entirely new apps instead—yet they still allege no facts suggesting that those apps (or any other app) sent precise geolocation data to Meta. And Plaintiffs' allegations of lack of consent also remain devoid of factual support, especially given that any developer that uses Meta's SDKs agrees to disclose to users any data sharing with Meta. Indeed, the only apps Plaintiffs actually name, Solitaire and Nextdoor, disclosed to their users that they collect geolocation data and could share personal data for advertising. This confirms that Plaintiffs lack any factual basis to support their purported lack of

consent even for the two apps they identify, much less for the unidentified apps to which they allude. Plaintiffs' generalized, conclusory allegations cannot state their claims.

Aside from that fundamental pleading failure, Plaintiffs' claims also still suffer from an additional, cross-cutting flaw: They require *affirmative* conduct by the defendant for liability, but it was *app developers*, not Meta, that allegedly chose to incorporate Meta's publicly available SDKs into their own apps and configure their apps to send data to Meta. Alleging that Meta made its SDKs generally available and *received* data does not show that *Meta* acted to obtain the at-issue data—*i.e.*, to "install or use a pen register"; "knowingly access" that data; or intentionally invade Plaintiffs' privacy, as their claims require. Plaintiffs' barebones additional allegations suggesting that data collection is beneficial to Meta do not remedy this problem.

Plaintiffs' claims also still fail for several additional, claim-specific reasons. As to the "pen register" statute, Plaintiffs do not allege that the SDKs fall within the statutory definition because they do not plausibly allege that the SDKs transmit (1) "dialing, routing, addressing, or signaling information," but (2) *not* "contents." Cal. Penal Code § 638.50(b). As to CDAFA, Plaintiffs do not plead "damage or loss," because their conclusory assertion that geolocation data is "valuable" to Meta shows no economic injury *to them*, much less the computer-specific damage the statute requires. Nor can Plaintiffs establish other key elements for a number of CDAFA subsections. As to invasion of privacy, Plaintiffs cannot allege any highly offensive intrusion from Meta's purported receipt of data. And Plaintiffs' unjust enrichment claim fails both because Plaintiffs do not state any of their other claims and because they do not allege Meta obtained their data through fraud or coercion. Plaintiffs' claims against Meta should be dismissed.

## II.    BACKGROUND[1]

### A.    Meta's SDKs

Meta is one of numerous companies that offer SDKs, which are pieces of publicly available code that app developers can choose to incorporate into the code of "their mobile apps." SAC ¶ 3; *see also id.* ¶¶ 46, 88. Meta's SDKs allow developers to code their apps to do certain things, like

---

[1] Unless otherwise noted, the facts recited herein are based on the SAC's allegations and accepted as true only for purposes of this motion. Internal citations are omitted unless otherwise noted.

allowing a user to log into the app with Facebook credentials or tracking certain actions (called "events") in the app, like in-app purchases.[2] Developers decide whether and how to use SDKs in their apps—they decide what SDKs to incorporate, "determine what events to send to Facebook," and "control sending these events to Facebook."[3] The Audience Network SDK, on which Plaintiffs focus, lets apps "deliver[] targeted advertising to [app] users generated by Facebook." SAC ¶ 49.

### B.    Meta's Terms Governing Developers' Use Of Its SDKs[4]

Meta sets forth restrictions on how its Facebook SDK may be used through its Business Tools Terms, which bind third-party app developers that choose to incorporate the Facebook SDK. *See* Ex. 2 at 1. The Business Tools Terms require that businesses using the Facebook SDK "represent and warrant that [they] have provided robust and sufficiently prominent notice" of data collection both "inside [the] app settings or any privacy policy and from within any store or website where [the] app is distributed." *Id.* at 2. The Business Tools Terms also require businesses to represent that they "have all of the necessary rights and permissions and a lawful basis . . . for the disclosure and use" of data they send using tools such as including the Facebook SDK. *Id.* at 1.

Meta also sets forth binding restrictions on how its Audience Network SDK may be used in its Audience Network Terms. *See* Ex. 4. Developers using the Audience Network SDK agree to provide "robust and sufficiently prominent notice to and obtain the necessary consent" from users "regarding the collection, sharing and use of data by Meta," including providing notice that the data may be used to "target ads." *Id.* at 3.

### C.    MobilityWare and Nextdoor's Privacy Policies[5]

Like virtually all app developers, MobilityWare (the developer of Solitaire) and Nextdoor

---

[2] *See* Ex. 1, "Resources for Completing App Store Data Practice Questionnaires for Apps That Include the Facebook or Audience Network SDK" (cited at SAC ¶ 5 n.1).

[3] *See id.*

[4] Plaintiffs still do not identify when they downloaded or used any app that purportedly used Meta's SDKs. This motion quotes the current versions of Meta's policies. These policies contained materially identical language throughout the past three years from the filing of the complaint—the longest statute of limitations for Plaintiffs' claims. *See* Cal. Penal Code § 502(e)(5); Exs. 2-6.

[5] This motion quotes the MobilityWare Privacy Policy in effect from September 18, 2024, and the Nextdoor Privacy Policy effective January 1, 2024 (last updated June 30, 2025). MobilityWare's prior Privacy Policies over the past three years contain materially identical language.  *See* Exs. 8-

have their own Privacy Policies. MobilityWare's Privacy Policy explains that it collects "unique device identifiers" and "geolocation" information. Ex. 7 at 3, 9. The Policy also specifies that "geo-location information" may be used to provide "relevant advertising"; that such information is collected only if "location services" is enabled for a particular app; and that users can "opt out" by changing their settings. *Id.* at 14. The Policy further states that MobilityWare may "use[] or disclose" personal information it collects to "deliver . . . targeted offers and ads." *Id.* at 10.

NextDoor's Privacy Policy specifies that it collects "geolocation" if a user "choose[s] to grant . . . permission to access [her] device's precise geolocation," and that Nextdoor uses geolocation to show "more relevant content or ads." Ex. 12 at 3. The policy also notes that Nextdoor collects "unique identifiers." *Id.* All of the "personal information" collected by Nextdoor may be used to "customize advertisements." *Id.* at 5; *see* Ex. 15 at 2 (California Privacy Notice stating that "[g]eolocation [d]ata" may be shared with "[a]dvertising partners"). Nextdoor also publishes a Cookie Policy which discloses that it may use "SDKs," including to "allow third party advertising companies" to "collect information about how you use Nextdoor, to show you ads they believe will be relevant to you on Nextdoor, and to measure how the ads perform." Ex. 14 at 1-2.[6]

### D.    This Lawsuit

Plaintiffs allege that they "downloaded one or more phone applications which contained the Facebook SDK and/or Facebook Audience Network SDK ('Apps')." SAC ¶ 10. Although Plaintiff Tsering initially alleged that Candy Crush was one such app, FAC ¶ 10, Plaintiffs now abandon that allegation and swap in two entirely different apps that purportedly shared their data: "Solitaire by developer MobilityWare", SAC ¶ 11, and "Nextdoor: Neighborhood Network," *id.* ¶ 22. At the same time, Plaintiffs allege that they do not know which apps "have used the Facebook SDK and/or Facebook Audience Network SDK or otherwise sent location data to Facebook." *Id.* ¶ 34. Plaintiffs nevertheless allege, "on information and belief," that the "Apps" sent "precise location" data to Meta using code from the Audience Network SDK, *id.* ¶¶ 49-50, without

---

11. Nextdoor's previous Privacy Policy, effective January 1, 2023 and updated on June 29, 2023, contains materially identical language. *See generally* Ex. 13.

[6] The Nextdoor policy defines "cookies" to include "pixels, tags, web beacons, software development kits ('SDKs') and local browser storage technologies." Ex. 14 at 1.

"disclos[ing]" that conduct, *id.* ¶¶ 19, 30, and that Meta used that data "for targeted advertising," *id.* ¶ 8. Plaintiffs allege no factual basis for assuming that the unknown "Apps" incorporated the same Meta SDKs (*i.e.*, the "Audience Network SDK" and/or the "Facebook SDK"), that they configured the SDKs in the same way, or that they "notified consumers of [] use" of SDKs in the same way, *id.* ¶ 52.

Plaintiffs also make very few factual allegations about Meta or its data collection, instead recounting news articles about other companies and general conclusions about location data. *See id.* ¶¶ 59-65 (allegations about "another data broker," "SDKs" generally, and an unnamed "advertising group"); *id.* ¶¶ 66-73 (allegations about academic research on "location data"). As to Meta, Plaintiffs cite a developer blog post stating that Meta may "receive and process certain contact, location, identifier, and device information associated with Facebook users" using code from the "Facebook SDK," and a 2018 BuzzFeed article stating that through "its SDK," Facebook can access "your location when you use" an app and provide targeted ads. *Id.* ¶¶ 5-6. Neither source refers to "precise" location or geolocation data.

## III.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements." *Id.* at 555. "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

## IV.    ARGUMENT

### A.    Plaintiffs' Conclusory Allegations Do Not Plausibly Allege Their Precise Geolocation Data Was Improperly Sent To Meta Without Their Consent

Plaintiffs' entire complaint is premised on apps unlawfully sending Meta precise geolocation data via the Facebook Audience Network SDK. But even after amending, Plaintiffs still fail to plead facts rendering it plausible (1) that any app sent geolocation data to Meta through that or any other Meta SDK, or (2) that any such transmission was done without Plaintiffs' consent. Plaintiffs' conclusory allegations do not "provide fair notice to" Meta or satisfy basic Rule 8

pleading standards. *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("'naked assertion[s]' devoid of 'further factual enhancement'" do not satisfy Rule 8); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023) (dismissing complaint where alleged disclosure of sensitive information had "no meaningful factual support"); *Stevens v. TD Bank, N.A.*, 2025 WL 1779164, at *5-6 (D.N.J. June 27, 2025) (similar). These pleading failures warrant dismissal.

First, Plaintiffs' conclusory assertions that "Apps" sent geolocation data to Meta lack any factual foundation. Plaintiffs assert that they downloaded "one or more phone applications which contained the Facebook SDK and/or Facebook Audience Network SDK," SAC ¶ 10, yet Plaintiffs continue to allege they do not actually *know* which apps use Meta's SDKs (except, apparently, Solitaire and Nextdoor), *id*. ¶¶ 34, 39-40. And Plaintiffs assert that these "Apps" transmitted precise geolocation data, *id.* ¶¶ 49-50, but Plaintiffs allege no facts to support that claim. Plaintiffs do not point to any code analysis, specify a particular transmission mechanism, or allege facts about their experiences with Solitaire or Nextdoor that would suggest either app sent precise geolocation data to Meta. Instead, Plaintiffs cite a Meta blog post stating that Meta may "receive and process certain . . . location . . . information associated with Facebook users" using code from the "Facebook SDK." *Id.* ¶ 5 n.1. But that post says nothing about "precise" location data. And, as Plaintiffs recognize, the webpage states that Meta may receive data "associated *with Facebook users*," SAC ¶ 5 (quoting Ex. 1) (emphasis added), but Plaintiffs do not allege that they are Facebook users.

The post itself also belies the notion that apps that incorporated Meta's SDKs necessarily transmit location data. Rather, the webpage makes clear that the information Meta "receive[s] depends on what SDK features 3rd party applications use" and that developers "determine which data types they are sending to Facebook." Ex. 1 at 2. Plaintiffs include *no* allegations about what SDK features any particular developer used for any app, including Solitaire and Nextdoor. That too renders Plaintiffs' assertions that their geolocation data was sent entirely speculative.

Nor can Plaintiffs plug the gaps in their allegations simply by surmising that apps must send precise geolocation data using code from the Facebook Audience Network SDK because such

information could be useful for targeted advertising. SAC ¶ 50. Such generic speculation does not suffice. *Iqbal*, 556 U.S. at 678 ("sheer possibility that a defendant has acted unlawfully" or facts merely "consistent with" liability not sufficient); *see also Marcus v. Nationstar Mortg. LLC*, 2022 WL 1486831, at *1 (9th Cir. May 11, 2022) (rejecting "conclusory allegation, made only on information and belief and without supporting factual allegations," about defendant's actions).[7] After all, if it did, a plaintiff could claim that any type of information was collected by any number of companies simply because it could theoretically be useful for targeted advertising. The plausibility standard requires more.[8]

Second, Plaintiffs' conclusory and undifferentiated allegations also preclude them from plausibly alleging lack of consent or permission, as required for each of their claims. CDAFA prohibits only actions taken "without permission." Cal. Penal Code § 502; *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 131-32 (N.D. Cal. 2020) (dismissing CDAFA claim based on consent). Plaintiffs likewise cannot allege a "reasonable expectation of privacy," as required for invasion of privacy, if they were on notice of the data collection. *Hammerling v. Google, LLC*, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024) (affirming dismissal of invasion of privacy claim because Google "expressly disclosed" tracking on third-party apps). And neither Plaintiffs' "pen register" claim nor their unjust enrichment claim can survive if Plaintiffs consented. *See* Cal. Penal Code § 637.2 (right to sue only if person has been "injured"); Cal. Civ. Code § 3515 ("[He] who consents to an act is not wronged by it.").

Yet Plaintiffs include only conclusory assertions that they "did not consent" to sharing of geolocation data. SAC ¶¶ 19, 24. And, at the same time, Plaintiffs recognize that Apps *may* have "notified consumers of [] use" of Meta's SDKs, while complaining that Meta "fails to verify" and "does not know" whether they do so. *Id*. ¶¶ 52, 68. Those allegations confirm that Plaintiffs'

---

[7] *See also, e.g.*, *Celgard, LLC v. Shenzhen Sr. Tech. Material Co. Ltd. (US) Res. Inst.*, 2020 WL 7392909, at *5 (N.D. Cal. July 23, 2020) (dismissing where plaintiff relied on allegations made "on information and belief," raising inference of lack of "knowledge of the underlying facts" and "speculation to an undue degree").

[8] Aside from being insufficient on their face, Plaintiffs' allegations are also inaccurate. If this case proceeds past the pleadings, discovery will confirm that precise geolocation data is *not* sent to Meta using code from the Facebook Audience Network SDK.

blanket assertion of non-consent across countless apps is neither plausible nor factually supported. *See, e.g.*, *New Mexico ex rel. Balderas v. Google, LLC*, 489 F. Supp. 3d 1254, 1263 (D.N.M. 2020) ("conclusory" allegation of "inadequate notice" insufficient to state privacy-related claim). Indeed, despite naming two completely new apps in their SAC, those apps' disclosures again belie Plaintiffs' conclusory assertions of lack of notice. Both apps' policies disclose that they collect personal information including geolocation information and use it to provide targeted advertising, and that they share and disclose personal information for advertising purposes. *See* Ex. 7 at 3, 10, 14; Ex. 12 at 3, 5; *see also* Ex. 15 at 2.  And Nextdoor's Cookie Policy further notes it may use SDKs in particular, Ex. 14 at 2, undermining Plaintiffs' conclusory assertions of non-consent. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988, *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) (court "need not . . . accept" as true allegations "contradict[ed] [by] matters properly subject to judicial notice").

In short, Plaintiffs cannot proceed on conclusory and speculative allegations that fail to show any factual basis for their claims, and courts routinely reject similarly deficient pleadings. *See, e.g.*, *In re Vizio,* 238 F. Supp. 3d at 1227-28 (rejecting allegations where plaintiffs did not articulate "with sufficient clarity" when and how data collection occurred); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1187 (N.D. Cal. 2020) (rejecting allegations that simply "summarize[d] third-party news stories about Facebook's ostensible capacity to 'discern precise locations' from user data"). This Court should do the same.

Finally, Plaintiffs also appear to assert claims on behalf of a class of users of *any* app that used "the Facebook SDK"—including apps they never downloaded or used. SAC ¶¶ 74-75. But the SAC plainly does not state any claim related to apps Plaintiffs never used, as Plaintiffs do not allege *any* facts related to whether and how such apps sent geolocation data (much less *their* geolocation data). *See Murphy v. Olly Pub. Benefit Corp.*, 651 F. Supp. 3d 1111, 1131-32 (N.D. Cal. 2023) (dismissing claims based on "speculative and conclusory" allegations as to "non-purchased" products). Nor would Plaintiffs have standing to assert such a claim, since they could not show that they "personally have been injured" by data collection from an app they never used, *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976), and whether those apps posed any

comparable injury would turn on which information was sent and their respective disclosures. *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025) (no standing for pen-register claim where Plaintiff did not allege collection of "*his* biographical information"); *cf. Zimmerman v. L'Oreal USA, Inc.*, 2023 WL 4564552, at *3 (N.D. Cal. July 17, 2023) (no standing for "unidentified unpurchased products").

### B.     Plaintiffs' Claims All Fail Because App Developers, Not Meta, Install The SDK

Even aside from Plaintiffs' threshold pleading failure, Plaintiffs fail to state their claims. Plaintiffs' pen register, CDAFA, and invasion of privacy claims require them to plead affirmative, active conduct by Meta to unlawfully acquire data.[9] But Plaintiffs do not do so.

The pen register and CDAFA statutes are penal statutes, which must be "construe[d]" "as favorably to the defendant as [their] language and the circumstances of [their] application may reasonably permit." *People v. Hyatt*, 109 Cal. App. 5th 735, 793-94 (2025). The pen register statute prohibits only affirmative "install[ation] or use" of a pen register. Cal. Penal Code § 638.51. CDAFA "is an anti-hacking statute intended to prohibit the unauthorized use of any computer system for improper or illegitimate purpose." *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1032 (N.D. Cal. 2014). It requires "knowing[] access"—*i.e.*, knowingly "gaining entry" or "causing" an input or output—to computer data. Cal. Penal Code § 502(c)(1); *see CTI III, LLC v. Devine*, 2022 WL 1693508, at *4 (E.D. Cal. May 26, 2022) (dismissing CDAFA claim where plaintiff "allege[d] no facts that [defendant] actively participated" in unlawful activity). And Plaintiffs' invasion of privacy claim requires an "intentional[] intru[sion]" into their privacy. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286, 295 (2009); *see Doe I v. Google LLC* ("*Google Pixel*"), 741 F. Supp. 3d 828, 844 (N.D. Cal. 2024) (intent "is a necessary element" of invasion of privacy); *Marden v. LMND Med. Grp., Inc.*, 2024 WL 4448684, at *5 (N.D. Cal. July 3, 2024) (Lin, J.) (dismissing invasion of privacy claim involving improper disclosure but no intrusion).

But *Meta* did not choose whether to incorporate any SDK into any given app. It simply "provides" its SDKs publicly "to developers," SAC ¶ 88, who may then choose to incorporate the SDKs into their apps and must get proper consent from users to send users' data to Meta. *See supra*

---

[9] Plaintiffs' unjust enrichment claim is contingent on their substantive claims. *See infra* at 15.

at 3. Plaintiffs' allegations, which amount to alleging that Meta *received* data that an independent developer unilaterally chose to send, are insufficient to show that Meta acted affirmatively to unlawfully obtain data. Plaintiffs' conclusory assertion that Meta "incorporates the Facebook Audience Network SDK into . . . third-party Apps" does not show otherwise. SAC ¶ 53. Rather, Plaintiffs' allegations make clear that *developers* (not Meta) "incorporate[] the Facebook SDK." *Id.* ¶ 6; *see id.* ¶ 3 ("app developers" "embed[] the Facebook SDK into their mobile apps"); *id.* ¶ 34 (referring to "applications which have used" the SDKs); *id.* ¶ 54 (alleging that "[a]pps that incorporate the Facebook Audience Network SDK" are the ones who "request access to the location data"); *see also Segen v. Rickey*, 2008 WL 590505, at *4 (N.D. Cal. Feb. 29, 2008) ("Plaintiff cannot plead contradictory versions of the facts."). Indeed, the very source Plaintiffs rely on to allege that Meta collects location data, SAC ¶ 5 & n.1, explains that "[d]evelopers determine what events to send to Facebook." Ex. 1 at 2. In other words, *Meta* does not act to unlawfully obtain the data; developers customize the code for their apps. In fact, by placing restrictions on developers through its terms, Meta "purposefully acted so as *not* to receive" any data obtained without proper consent. *Google Pixel*, 741 F. Supp. 3d at 840.

Meta pointed out this deficiency in its initial motion to dismiss. Yet Plaintiffs fail to remedy the defect. Plaintiffs allege only that Meta "encourages" app developers to use its SDK and makes the SDK free. SAC ¶¶ 47-48. But these allegations do not change the fact that *developers*, not Meta, choose whether to "install or use" the SDK, Cal. Penal Code § 638.51, and determine what, if any, information to send to Meta. Plaintiffs thus fail to allege that Meta installed or used a pen register, knowingly accessed data, or intentionally intruded. That squarely distinguishes this case from *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924 (N.D. Cal. 2024) (Lin, J.), where this Court found a pen-register claim sufficiently pled based on express allegations that the defendant *web developer* "was responsible for the installation of the trackers." *Id.* at 931; *see also Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 863 (N.D. Cal. 2011) ("cases interpreting" CDAFA "impose liability against individuals or entities who are alleged to have actually participated in [] unauthorized [behavior]").

## C.    Plaintiffs' Claims All Fail For Additional Reasons

Even aside from the deficiencies above, Plaintiffs' claims fail for additional reasons.

### 1.    Plaintiffs Do Not State A Pen-Register Claim

Plaintiffs' attempt to shoehorn their allegations about Meta's alleged receipt of geolocation data into California's "pen register" provision fails. The statute defines a "pen register" as "a device or process that records or decodes *dialing, routing, addressing, or signaling information* transmitted by an instrument or facility from which a wire or electronic communication is transmitted, *but not* the contents of a communication." Cal. Penal Code § 638.50 (emphasis added). Plaintiffs do not plausibly allege Meta's SDKs satisfy that definition for two independent reasons.

First, geolocation data is not "addressing or signaling" information under the statute.[10] The "pen register" provision is specifically directed to devices that collect information that routes or directs communications from the sender to the recipient. Traditional pen registers, for example, were devices that "collect[ed] information about a phone call from Party A to Party B," including "the phone number called"—*i.e.*, dialing information. *Fandom*, 754 F. Supp. 3d at 929. And just as dialing and routing information refer to information that directs a communication from point A to point B, so too do addressing and signaling information. "Address" generally refers to "directions for delivery." *Address*, https://www.merriam-webster.com/dictionary/address. "[S]ignaling information" similarly refers to information that aids a signal to reach its destination. *See U.S. Telecom. Ass'n v. F.C.C.*, 227 F.3d 450, 463 (D.C. Cir. 2000) (under federal statute, cell-site signals, "which are necessary to achieve communications between the caller and the party he . . . is calling, clearly are 'signaling information'"). Construing these terms to cover information necessary for transmission therefore comports with their plain meaning. It also harmonizes them with "dialing" and "routing" information—the neighboring terms in the list. *See Davis v. Fresno Unified Sch. Dist.*, 14 Cal. 5th 671, 689 (2023) (under *noscitur a sociis* canon, "a specific item in a statutory list of items is qualified by the overall type or subject matter characterizing the list").

Geolocation information collected when a person is playing a game on an app does not qualify. It is extraneous to the user's communications with the app and plays no role in directing any communication. Indeed, the legislative history confirms that addressing or signaling

---

[10] Plaintiffs also refer to "personal information," SAC ¶ 103, but still do not allege what "personal information" was purportedly sent and thus provide no basis to believe any such information would be "addressing or signaling" information.

information does not include location data: The bill's author explained that law enforcement uses pen registers "to record all outgoing numbers from a particular telephone line" but that pen registers "do *not* record audio" and "*cannot* be used to obtain real-time location data on a cellular telephone." Senate Committee on Public Safety Rep., AB 929 (2015) (emphasis added). The legislature thus did not intend to include GPS or precise geolocation data when it used the terms "addressing, or signaling information." Plaintiffs thus fail to allege Meta's SDKs are "pen register[s]" under the statute. Again, this distinguishes this case from *Fandom*, which involved IP addresses that the Court concluded were "addressing" information. 754 F. Supp. 3d at 928.

Second, Plaintiffs fail to adequately allege that developers do not send "contents of a communication" through Meta's SDKs, an independent component of the "pen register" definition. Cal. Penal Code § 638.50(b). Where the "device or process" collects contents, a pen-register claim "cannot survive." *Kishnani*, 2025 WL 1745726, at *4-5 (dismissing claim under closely related trap-and-trace statute because information collected was "contents"); *see also Fandom*, 754 F. Supp. 3d at 929 (explaining that information allegedly collected was not "contents"). Plaintiffs assert that the "personal information transmitted to Defendant through its SDK was non-content information." SAC ¶ 104. But the Court need not "accept as true" this bare "legal conclusion." *Iqbal*, 556 U.S. at 678. Plaintiffs do not say what "personal information" the Apps purportedly transmit or allege *facts* showing the SDK does not collect "contents." Plaintiffs thus fail to state their claim.

### 2.     Plaintiffs Do Not State A Claim Under CDAFA

CDAFA is an anti-hacking statute, and "as a penal statute," it "is to be strictly construed." *Claridge*, 785 F. Supp. 2d at 863. Plaintiffs assert violations of subsections (c)(1), (c)(2), and (c)(7) of CDAFA, but fail to allege "damage or loss," as well as other critical requirements.

***No damage or loss.*** CDAFA provides a private right of action only to those "who suffer[] damage or loss by reason of" a violation of the statute. Cal. Penal Code § 502(e)(1). After failing to allege *any* damage or loss theory in their prior complaint, Plaintiffs now add a conclusory allegation that "geolocation data is highly valuable" because "precise geolocation data can be used to improve targeted advertising." SAC ¶ 95. But that allegation still does not identify any *damage*

*or loss* to Plaintiffs. And their allegation that Meta was "unjustly enriched" by using their information, *id.* ¶ 93, fails for the same reason. Even if "'Facebook may have gained money through its sharing or use of the plaintiffs' information,'" "'that's different from saying the plaintiffs lost money.'" *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025) (dismissing CDAFA claim). Although this Court held in *Smith v. Rack Room Shoes*, 2025 WL 2210002, at *3 (N.D. Cal. Aug. 4, 2025) that unjust enrichment *could* provide the requisite loss or damage, Plaintiffs fail to adequately allege that Meta was unjustly enriched, *see infra*, so they cannot rely on that theory here. Moreover, in *Rack Room*, this Court relied on *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020). But the court there held that the "right to disgorgement of profits resulting from unjust enrichment," if sufficiently alleged, could constitute a "legal interest" sufficient for *Article III* standing. *Id.* at 600. It did not analyze CDAFA's statutory "damage or loss" requirement, which requires more than the mere "violation" of a "state law interest" the Ninth Circuit found sufficient for Article III, *id.* at 601.

In fact, many courts have read CDAFA's "damage or loss" provision as limited specifically to "costs related to fixing a computer, lost revenue, or other consequential damages incurred due to an interruption of computer services." *Pratt v. Higgins*, 2023 WL 4564551, at *9 (N.D. Cal. July 17, 2023); *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1021 (C.D. Cal. 2023) (requiring "some damage to the computer system"). That limitation aligns with the statute's anti-hacking focus. As the Supreme Court explained in analyzing the Computer Fraud and Abuse Act, the federal counterpart to CDAFA, the fact that "'damage' and 'loss'" "focus on technological harms" "makes sense in a scheme 'aimed at preventing the typical consequences of hacking.'" *Van Buren v. United States*, 593 U.S. 374, 391-92 (2021). CDAFA's language stating that compensatory damages "shall include" expenditures to verify that a computer system or data "was or was not altered, damaged, or deleted" confirms that limited focus. Cal. Penal Code § 502(e)(1). Here, Plaintiffs do not identify any cognizable loss or damage, much less damage to their devices.

***No actionable "use" of data under 502(c)(1).*** Section 502(c)(1) penalizes one who "knowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data" for certain prohibited purposes. Courts have correctly read the "otherwise uses" phrase

as prohibiting only use "similar to alteration, damage, deletion, or destruction," consistent with the "doctrine of ejusdem generis," which provides that "when a list of two or more specific terms is followed by a more general term, the otherwise wide meaning of the general term must be restricted to the same class of the specific terms that precede it." *Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1175 n.5 (C.D. Cal. 2018); *see McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1020 (C.D. Cal. 2020) (same). Here, Plaintiffs allege only that Meta "used" the data developers sent it for targeted advertising, SAC ¶ 89—which is not remotely akin to damaging, destroying, or altering data. Plaintiffs therefore cannot state a (c)(1) claim.

*No unauthorized access under 502(c)(7).* While other sections of CDAFA penalize "knowingly access[ing]" and then taking some *other* action "without permission," Section 502(c)(7) penalizes *access* "without permission," thus focusing on the manner of access. Accordingly, courts have required "a defendant to 'circumvent[] technical or code based barriers' to access a computer 'without permission'" under (c)(7). *Bui-Ford v. Tesla*, 2024 WL 694485, at *5 (N.D. Cal. Feb. 20, 2024); *cf. Smith v. Rack Room Shoes*, 2025 WL 1085169, at *6 (N.D. Cal. Apr. 4, 2025) (holding that (c)(2), which does not require *access* "without permission," does not require circumvention of technological barriers). Plaintiffs do not allege that Meta circumvented any technological barrier to access their devices. Plaintiffs' (c)(7) claim therefore fails.

### 3.    Plaintiffs Do Not State An Invasion of Privacy Claim

Plaintiffs fail to state their invasion of privacy claim, because aside from the failure to allege any intrusion at all, *supra* at 9-10, they also fail to allege that any intrusion was "highly offensive" and "sufficiently serious . . . to constitute an egregious breach of the social norms." *Hernandez*, 47 Cal. 4th at 295. This "set[s] a high bar." *Belluomini v. Citigroup Inc.*, 2013 WL 5645168, at *3 (N.D. Cal. Oct. 16, 2013). The collection or "disclosure of highly personal information" does not suffice to establish a highly offensive intrusion absent "blatantly deceitful" conduct or other bad acts. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022). As other courts have held, disclosure of device identifiers and geolocation data—the data allegedly sent here—is not "an egregious breach of social norms." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012); *see Hubbard v. Google LLC*, 2024 WL 3302066, at

*8 (N.D. Cal. July 1, 2024) (requiring a "plus factor" or "'bad act'" beyond alleged unlawfulness); *Cap. One Fin. Corp.*, 768 F. Supp. 3d at 1047 (disclosure of personal information not egregious). Moreover, Plaintiffs allege, at most, that Meta *received* location data "sent" by the Apps. SAC ¶ 17. Plaintiffs do not allege that Meta decided whether Apps would install Meta's SDKs, much less that Meta acted deceptively to obtain Plaintiffs' information. To the contrary, Meta required app developers to provide adequate notice regarding data collection. *See supra* at 3. Meta's receipt of information from apps that choose to send it is hardly an egregious breach of social norms.

### 4.    Plaintiffs' Unjust Enrichment Claim Fails

Plaintiffs' unjust enrichment claim also fails. Unjust enrichment is not a standalone cause of action in California, but "essentially a claim for restitution." *Lau v. Gen Digit. Inc.*, 2024 WL 1880161, at *5 (N.D. Cal. Apr. 3, 2024) (Lin, J.). Accordingly, because Plaintiffs fail to state any claim against Meta, they cannot state an unjust enrichment claim either. *See Google Pixel*, 741 F. Supp. 3d at 848-49 (dismissing unjust enrichment claim "because the plaintiffs ha[d] not stated a claim against Google for any unlawful conduct"); *Brand v. KSF Acquisition Corp.*, 2023 WL 3225409, at *9 (S.D. Cal. Mar. 17, 2023) (similar).

The unjust enrichment claim also fails because Plaintiffs do not allege that Meta was "*unjustly* enriched at [their] expense," *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) (emphasis added), through "mistake, fraud, coercion, or request.'" *Russell v. Walmart, Inc.*, 680 F. Supp. 3d 1130, 1133 (N.D. Cal. 2023) (citation omitted). Plaintiffs allege no misrepresentation, fraud, or coercion by Meta, instead pointing only to their "belie[f]" that apps would not transfer their location. SAC ¶¶ 16, 27. Nor do Plaintiffs allege that any benefit was at their "expense," because they do not (and could not plausibly) "allege that they had an expectation that they would be compensated for" their data. *Marden*, 2024 WL 4448684, at *5. Plaintiffs therefore fail to allege that they "'retain a stake in the profits garnered,'" as required. *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 834-35 (N.D. Cal. 2020).

## V.    CONCLUSION

Plaintiffs had an opportunity to cure the defects in their prior complaint, and they failed to do so. Meta respectfully requests dismissal of the Second Amended Complaint with prejudice.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW

META'S MOT. TO DISMISS
SECOND AMEND. CLASS ACTION COMPL.
No. 3:25-cv-01611-RFL

Dated: August 12, 2025                Respectfully submitted,


                                      LATHAM & WATKINS LLP

                                      By */s/ Melanie M. Blunschi*
                                          Melanie M. Blunschi (Bar No. 234264)
                                          *melanie.blunschi@lw.com*
                                          Kristin Sheffield-Whitehead (Bar No. 304635)
                                          *kristin.whitehead@lw.com*
                                          Dianne Kim (Bar No. 348367)
                                          *dianne.kim@lw.com*
                                          505 Montgomery St., Suite 2000
                                          San Francisco, CA 94111
                                          Telephone: +1.415.391.0600

                                          Margaret A. Upshaw (*pro hac vice*)
                                          *maggie.upshaw@lw.com*
                                          555 Eleventh Street, NW, Suite 1000
                                          Washington, D.C. 20004-1304
                                          Telephone: +1.202.637.2200

                                          *Attorneys for Defendant*
                                          *Meta Platforms, Inc.*