LATHAM & WATKINS LLP
Melanie M. Blunschi (Bar No. 234264)
 *melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
 *kristin.whitehead@lw.com*
Dianne Kim (Bar No. 348367)
 *dianne.kim@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice*)
 *maggie.upshaw@lw.com*
Ruth Hirsch (*pro hac vice*)
 *ruth.hirsch@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

*Attorneys for Defendant*
*Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| LISA TSERING and DOMINIQUE DAVIS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC., fka FACEBOOK, INC.,<br><br>Defendant. | Case No. 3:25-cv-01611-RFL<br><br>**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing: May 19, 2026<br>Time: 10:00 a.m.<br>Location: Courtroom 15—18th Floor<br>Judge: Hon. Rita F. Lin |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on May 19, 2026 at 10:00 a.m., before the Honorable Rita F. Lin, United States District Court, Courtroom 15, 18th Floor, 450 Golden Gate Ave., San Francisco, California, Defendant Meta Platforms, Inc. ("Meta") will and hereby does move for an order dismissing Plaintiffs Lisa Tsering and Dominique Davis's ("Plaintiffs") Third Amended Class Action Complaint (Dkt. 53) for failure to state a claim under Rule 12(b)(6). This motion is based on this notice of motion; the memorandum of points and authorities in support thereof that follows; the request for judicial notice and accompanying declaration; the pleadings, records, and papers on file in this action; oral argument; and any other matters properly before the Court.

## STATEMENT OF ISSUE TO BE DECIDED

Whether the Court should dismiss the Third Amended Class Action Complaint for failure to state any claim upon which relief can be granted under Rule 12(b)(6).

Dated: March 11, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By */s/ Melanie M. Blunschi*
   Melanie M. Blunschi (Bar No. 234264)
   *melanie.blunschi@lw.com*
   Kristin Sheffield-Whitehead (Bar No. 304635)
   *kristin.whitehead@lw.com*
   Dianne Kim (Bar No. 348367)
   *dianne.kim@lw.com*
   505 Montgomery St., Suite 2000
   San Francisco, CA 94111
   Telephone: +1.415.391.0600

   Margaret A. Upshaw (*pro hac vice*)
   *maggie.upshaw@lw.com*
   Ruth Hirsch (*pro hac vice*)
   *ruth.hirsch@lw.com*
   555 Eleventh Street, NW, Suite 1000
   Washington, D.C. 20004
   Telephone: +1.202.637.2200

   *Attorneys for Defendant*
   *Meta Platforms, Inc.*

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................................ 1

II.     BACKGROUND .................................................................................................................. 2

        A.      Meta's SDK Code ....................................................................................................... 2

        B.      Meta's Terms Governing Developers' Use Of Its SDK Code............................. 2

        C.      MobilityWare and Nextdoor's Privacy Policies ..................................................... 3

        D.      This Lawsuit................................................................................................................. 4

                1.      The Court's Dismissal Of The SAC ............................................................. 4

                2.      Plaintiffs' TAC ................................................................................................ 5

III.    LEGAL STANDARD........................................................................................................... 6

IV.     ARGUMENT ....................................................................................................................... 6

        A.      Plaintiffs Do Not Cure The Deficiencies The Court Identified In
                Their CDAFA And Pen-Register Claims ................................................................ 6

                1.      Plaintiffs' CDAFA Claim Still Fails Because Plaintiffs Still
                        Do Not Allege Meta Knew It Lacked Permission To
                        Access The Data .............................................................................................. 6

                2.      Plaintiffs' Pen-Register Claim Still Fails For Multiple
                        Reasons ............................................................................................................. 8

        B.      Plaintiffs' Pen-Register And CDAFA Claims Also Fail Because
                Plaintiffs Do Not Allege That Meta Engaged In The Conduct
                Those Statutes Prohibit ............................................................................................. 12

                1.      Plaintiffs Do Not Allege That Meta "Installed" Or "Used"
                        SDK Code ....................................................................................................... 12

                2.      Plaintiffs Do Not Allege That Meta "Accessed" A
                        Computer Or Computer Data ....................................................................... 13

        C.      Under Plaintiffs' Erroneous Interpretations, These Statutes Are So
                Capacious They Fail To Provide Fair Notice ....................................................... 14

        D.      Plaintiffs' Invasion Of Privacy Claim Still Fails ................................................. 15

        E.      Plaintiffs' Unjust Enrichment Claim Still Fails ................................................... 15

V.      CONCLUSION.................................................................................................................. 15

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
LOS ANGELES

i

META'S  MOT. TO DISMISS
THIRD AMEND. CLASS ACTION COMPL.
CASE NO. 3:25-cv-01611-RFL

# TABLE OF AUTHORITIES

## CASES

*Adams v. Johnson*,
355 F.3d 1179 (9th Cir. 2004) ............................................................................................... 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................................................. 11

*Bailey v. United States*,
516 U.S. 137 (1995) .............................................................................................................. 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................................... 6

*Butcher v. Knudsen*,
38 F.4th 1163 (9th Cir. 2022) .............................................................................................. 14

*Camacho v. DG Premium Brands, Inc.*,
No. 24STCV21672, Order (Cal. Sup. Ct. Apr. 17, 2025) ..................................................... 12

*Canyon Ferry Rd. Baptist Church of E. Helena, Inc. v. Unsworth*,
556 F.3d 1021 (9th Cir. 2009) .............................................................................................. 14

*Carolus v. Nexstar Media Inc.*,
2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) ........................................................................ 10

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .................................................................................. 15

*Doe v. Eating Recovery Ctr. LLC*,
2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ...................................................................... 14

*Durell v. Sharp Healthcare*,
183 Cal. App. 4th 1350 (2010) ............................................................................................. 15

*F.C.C. v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012) .............................................................................................................. 14

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ................................................................................ 15

*Harrott v. Cnty. of Kings*,
25 Cal. 4th 1138 (2001) ........................................................................................................ 14

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ................................................................................ 10

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ............................................................................... 8

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024)........................................................................ 15

*In re A.L.*,
38 Cal. App. 5th 15 (2019) ................................................................................................... 7

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ................................................................................ 15

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .............................................................................. 15

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) .............................................................................. 10

*Marden v. LMND Med. Grp., Inc.*,
2024 WL 4448684 (N.D. Cal. July 3, 2024) (Lin, J.) ......................................................... 15

*Move Eden Hous. v. City of Livermore*,
114 Cal. App. 5th 1282 (2025), *review denied* (Jan. 14, 2026) ......................................... 12

*People v. Orozco*,
9 Cal. 5th 111 (2020) ......................................................................................................... 13

*People v. Super. Ct.*,
18 Cal.5th 838 (2025) ......................................................................................................... 15

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ............................................................................................. 10

*Russell v. Walmart, Inc.*,
680 F. Supp. 3d 1130 (N.D. Cal. 2023) .............................................................................. 15

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) ................................................................................ 12

*Teran v. Super. Ct.*,
112 Cal. App. 5th 371 (2025), *reh'g denied* (July 16, 2025), *review denied*
(Sept. 17, 2025)..................................................................................................................... 8

*United Riggers & Erectors, Inc. v. Coast Iron & Steel Co.*,
4 Cal. 5th 1082 (2018) ....................................................................................................... 12

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .............................................................................................. 10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

META'S MOT. TO DISMISS
THIRD AMEND. CLASS ACTION COMPL.
CASE NO. 3:25-cv-01611-RFL

*United States v. Heredia*,
    483 F.3d 913 (9th Cir. 2007) .................................................................................. 8

*United States v. Kittson*,
    161 F.4th 619 (9th Cir. 2025) ................................................................................ 12

*Van Buren v. United States*,
    593 U.S. 374 (2021) ................................................................................................ 8

## STATUTES

Cal. Civ. Code § 3515 ......................................................................................................... 10

Cal. Penal Code § 502(b)(1) .................................................................................................. 2

Cal. Penal Code § 502(c) ................................................................................................. 2, 13

Cal. Penal Code § 502(c)(1) ................................................................................................. 13

Cal. Penal Code § 502(c)(2) ........................................................................................... 13, 14

Cal. Penal Code § 502(c)(7) ........................................................................................... 13, 14

Cal. Penal Code § 502(e)(5) ................................................................................................... 2

Cal. Penal Code § 637.2 ....................................................................................................... 10

Cal. Penal Code § 638.50 ....................................................................................................... 8

Cal. Penal Code § 638.50(b) ......................................................................................... 9, 11, 12

Cal. Penal Code § 638.50(c) ............................................................................................. 11, 12

Cal. Penal Code § 638.51 ....................................................................................... 1, 11, 12, 14

Cal. Penal Code § 638.51(a) ............................................................................................. 12, 13

Cal. Penal Code § 7(b)(5) ....................................................................................................... 7

## RULES

Rule 12(b)(6) ........................................................................................................................... 6

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
LOS ANGELES

iv

META'S MOT. TO DISMISS
THIRD AMEND. CLASS ACTION COMPL.
CASE NO. 3:25-cv-01611-RFL

## I.    INTRODUCTION

Plaintiffs' Third Amended Complaint ("TAC") fails to cure the deficiencies this Court identified in their prior complaint. As to the CDAFA claim, Plaintiffs still fail to allege that Meta *knew* it lacked permission to receive the data app developers allegedly sent via SDK code. Plaintiffs' only theory of "knowledge" is that Meta was somehow under an affirmative obligation to read every app developer's privacy policy to ensure each developer secured consent, and that if it had done so, it would *then* have known that Nextdoor and MobilityWare failed to disclose location data sharing. That theory is doubly flawed. First, as this Court already held, Nextdoor and MobilityWare's policies *did* disclose such data sharing. Second, there is no basis whatsoever to conclude that Meta had "knowledge" of a lack of permission because it did *not* read a particular third-party privacy policy. Both problems independently doom Plaintiffs' CDAFA claim.

As to the pen-register claim, Plaintiffs still fail to allege that the SDKs meet the statutory definition of a "pen register." Plaintiffs still do not allege that precise geolocation data is "used for 'dialing, routing, addressing, or signaling'" in the context of Plaintiffs' use of the apps. Dkt. 52 at 12. And although Plaintiffs add allegations that IP addresses were transmitted, those allegations cannot save the claim—both because Plaintiffs also fail to allege the IP addresses were actually used *as addressing information* in the context of the alleged communications here and because disclosure of IP addresses alone does not show any cognizable injury. The pen-register claim also independently fails because Plaintiffs still do not sufficiently allege that contents were not collected. And even if Plaintiffs alleged addressing information and not contents, the allegations still do not show the SDKs functioned as pen registers, because they collected information about the device on which they were installed, rather than who the device was communicating *with*.

Moreover, in addition to the previous bases for dismissal, Plaintiffs' statutory claims fail for another reason: the conduct Plaintiffs allege simply does not fit within the statutes they invoke. Plaintiffs' theory is that Meta is liable for *receiving* data that developers chose to share. But the pen-register statute penalizes only a "person" who "install[s]" or "use[s]" a pen register, Cal. Penal Code § 638.51, and here, Plaintiffs allege that *app developers*, not Meta, chose to use SDK code and configured it within their apps. This Court did not reach this issue in its prior order, but

Plaintiffs' failure to allege that *Meta* installed or used the alleged pen register provides independent grounds for dismissal. Similarly, the CDAFA subsections Plaintiffs invoke penalize a "person" who "[k]nowingly" "*accesses*" a computer or computer data. *Id.* § 502(c) (emphasis added). While this Court previously concluded that Plaintiffs met that requirement because *the SDKs* "cause[] output," *id.* § 502(b)(1), *app developers* are the "person[s]" using SDK code who engage in the access and configure the code—not Meta. *Id.* § 502(c). Meta thus respectfully requests reconsideration of this holding. If CIPA and CDAFA were read to impose liability on Meta for mere *receipt* of data as a result of a third party's use of publicly available code, they would fail to afford fair notice and be unconstitutionally vague as applied to the conduct here.

Finally, the invasion of privacy claim fails for the same reasons as the CDAFA claim, and the unjust enrichment claim fails with the other claims. This Court should dismiss with prejudice.

## II. BACKGROUND

### A. Meta's SDK Code

As Meta previously explained, Meta is one of many companies that offers SDKs, which are publicly available code that app developers can choose to incorporate into "their mobile apps." TAC ¶ 4; *see also id.* ¶¶ 52, 101. Meta's SDK code allows developers to code their apps to do certain things, like allow a user to log into the app with Facebook credentials or track certain actions (called "events") in the app, like in-app purchases.[1] Developers decide whether and how to use SDK code in their apps—they decide what SDK code to incorporate, "determine what events to send to Facebook," and "control sending these events to Facebook."[2] The Audience Network SDK lets apps "deliver targeted advertising to [app] users generated by Facebook." TAC ¶ 62.

### B. Meta's Terms Governing Developers' Use Of Its SDK Code[3]

Meta sets forth restrictions on how its Facebook SDK code may be used in its Business

---

[1] *See* Ex. 1, "Resources for Completing App Store Data Practice Questionnaires for Apps That Include the Facebook or Audience Network SDK" (cited at TAC ¶¶ 7 n.1, 53 n.6).

[2] *See id.* at 2.

[3] This motion quotes the versions of Meta's terms in effect when the TAC was filed. *See* TAC ¶ 11 n.3 (citing Business Tools Terms last visited 1/26/26). These terms contained substantially similar language throughout the past three years from the filing of each initial complaint—the longest statute of limitations for Plaintiffs' claims. *See* Cal. Penal Code § 502(e)(5); Exs. 16-22.

Tools Terms, which bind third-party app developers that choose to incorporate code from the Facebook SDK. *See* Ex. 16 at 1. The Business Tools Terms require that businesses using Facebook SDK code "represent and warrant that [they] have provided robust and sufficiently prominent notice" of data collection both "inside [the] app settings or any privacy policy and from within any store or website where [the] app is distributed." *Id.* at 2-3. The Business Tools Terms also require businesses to represent that they "have all of the necessary rights and permissions and a lawful basis … for the disclosure and use" of data they send. *Id.* at 1.

Meta also sets forth binding restrictions on how its Audience Network SDK code may be used in its Audience Network Terms. *See* Ex. 19. Developers using code from the Audience Network SDK agree to provide "robust and sufficiently prominent notice to and obtain the necessary consent" from users "regarding the collection, sharing and use of data by Meta," including providing notice that the data may be used to "target ads." *Id.* at 2-3.

### C.    MobilityWare and Nextdoor's Privacy Policies[4]

Like virtually all app developers, MobilityWare (the developer of Solitaire) and Nextdoor have their own Privacy Policies. *See* TAC ¶ 81. MobilityWare's Privacy Policy explains that it collects "unique device identifiers," "IP address," and "geolocation" information. Ex. 3 at 3, 9. The policy further explains that "functions offered by other sources such as social networking sites like Facebook … may collect your IP address" and other information. *Id.* at 4. The policy also states that MobilityWare may "use[] or disclose" personal information it collects to "deliver … targeted offers and ads." *Id.* at 10. The policy specifies that "geo-location information" may be used to provide "relevant advertising"; that such information is collected only if "location services" is enabled for a particular app; and that users can "opt out" by changing their settings. *Id.* at 14.

NextDoor's Privacy Policy specifies that it collects "geolocation" if a user "choose[s] to grant … permission to access [her] device's precise geolocation," and that Nextdoor uses

---

[4] This motion quotes the MobilityWare Privacy Policy dated September 18, 2024, and the Nextdoor Privacy Policy effective January 1, 2024 (last updated June 30, 2025)—the same versions quoted in connection with the SAC. *See* Dkt. 52. MobilityWare's prior Privacy Policies over the past three years contain substantially similar language. *See* Exs. 4-7. Nextdoor's Privacy Policy, effective January 1, 2023 and updated on June 29, 2023, contains substantially similar language. *See generally* Ex. 11. And MobilityWare and Nextdoor's updated policies contain substantially similar language. *See* Exs. 2, 8-9.

geolocation to show "more relevant content or ads." Ex. 10 at 3. The policy also notes that Nextdoor collects "unique identifiers" and "IP address," and that it "may derive your general location, such as city, state or geographic area, from your IP address." *Id.* at 4. All of the "personal information" collected by Nextdoor may be used to "customize advertisements." *Id.* at 5. The policy further discloses that "advertising partners" may use "technologies" to collect information, associate it "with you," and "customiz[e] ads." *Id.* at 7.[5] Nextdoor also publishes a Cookie Policy, which discloses that it may use "SDKs," including to "allow third party advertising companies" to "collect information about how you use Nextdoor" and "show you ads." Ex. 13 at 1-2.[6]

### D. This Lawsuit

Plaintiff Tsering filed her initial complaint on February 14, 2025, alleging that "one or more phone applications which contained the Facebook SDK and/or Facebook Audience Network SDK ('Apps')," including Candy Crush, improperly sent her location data to Meta. Dkt. 1 ¶ 10. After one amendment, Dkt. 24, Meta moved to dismiss, Dkt. 25. Plaintiffs then filed the SAC, which added Plaintiff Davis, and alleged on "information and belief" that two entirely new apps— "Solitaire by developer MobilityWare" and "Nextdoor," Dkt. 28 ¶¶ 11, 22, sent "precise location" data to Meta through Audience Network SDK code, *id.* ¶¶ 49-50, without disclosing that conduct. Meta again moved to dismiss, Dkt. 32, and this Court granted that motion.

#### 1. The Court's Dismissal Of The SAC

This Court dismissed Plaintiffs' SAC in its entirety. *See* Dkt. 52. The Court concluded that Plaintiffs failed to state their CDAFA claim because they did not plausibly allege that Meta knew it lacked permission to access their data. *Id.* at 6-7. Although Plaintiffs claimed that Meta did not sufficiently inform app developers that it could receive geolocation data, and thus that developers *could not* disclose that conduct to users, the Court found those allegations "conclusory," and "insufficient to raise the necessary inference" that Meta knew app developers had not secured consent to share geolocation data from users. *Id.* at 7-8. The Court noted that "MobilityWare and

---

[5] *See also* Ex. 15 at 2 ("Geolocation" shared with "advertising partners"); Ex. 14 at 1-2 (similar).

[6] The Nextdoor policy defines "cookies" to include "pixels, tags, web beacons, software development kits ('SDKs') and local browser storage technologies." Ex. 13 at 1; *see* Ex. 12 at 1.

Nextdoor's privacy policies *do* disclose that user geolocation data may be shared with third-party advertising partners, with MobilityWare even specifically naming Facebook." *Id.* The disclosures in these policies "render[ed] it implausible that Meta provided such opaque information to Nextdoor and MobilityWare that Meta had to know the third-party app developers could not possibly obtain effective consent from consumers." *Id.* at 9. The Court granted leave to amend so that Plaintiffs could "attempt to allege additional facts from which a plausible inference could be drawn" that Meta *knew* it lacked permission to access data. *Id.*

The Court further held that Plaintiffs failed to state their pen-register claim, because Plaintiffs did not allege facts showing that the SDK code at issue met the statutory definition of a "pen register." *Id.* at 12. First, Plaintiffs did "not adequately allege that the information collected was 'dialing, routing, addressing, or signaling' information." *Id.* Second, because they "fail[ed] to adequately allege what exactly the electronic communication at issue was," Plaintiffs "fail[ed] to allege that the information collected did not constitute the content of such communication." *Id.*

The Court dismissed Plaintiffs' invasion of privacy claim because that claim requires "highly offensive" conduct, such as "secret or deceptive" data collection, and Plaintiffs had "fail[ed] to plausibly allege" that Meta knowingly collected data without user consent. *Id.* at 13. It dismissed the unjust enrichment claim because Plaintiffs failed to state any other claim. *Id.* at 14.

### 2.    Plaintiffs' TAC

Plaintiffs filed their TAC on February 9, 2026. *See* Dkt. 53. The TAC reprises Plaintiffs' allegations that "on information and belief," an unspecified number of "Apps," including Solitaire and NextDoor, sent "precise geolocation" data to Meta through SDK code. TAC ¶ 63; *id.* ¶¶ 18, 23, 53-55. To support their allegations that geolocation information was transmitted, Plaintiffs again rely on a developer blog post stating that Meta may "receive and process certain … location … information associated with Facebook users" through the "Facebook SDK," and a 2018 BuzzFeed article stating that through "its SDK," Facebook can access "your location when you use" an app and provide targeted ads. *Id.* ¶¶ 7-8. Neither source refers to "precise" location or geolocation data. Plaintiffs still do not allege they are Facebook users. Plaintiffs add new allegations that the same apps sent Plaintiffs' "public IP address[es]" and "device information" to

Meta via Facebook SDK and Audience Network SDK code. *Id.* ¶¶ 6, 18, 29.

On the topic of Meta's knowledge, Plaintiffs allege that Meta "knew" that developers "failed to obtain the requisite consent" because Meta should have "check[ed] the privacy policies of … third-party developers" that used code from the SDKs—of which Plaintiffs allege there are "tens of thousands." *Id.* ¶¶ 12, 13, 66. Plaintiffs assert that if Meta had done so, it would have found MobilityWare and Nextdoor's disclosures "clearly deficient." *Id.* ¶ 12. Plaintiffs further assert, citing a federal case regarding drug trafficking, that Meta's failure to review every developer's privacy policy rendered it "willfully blind" to the purported deficiencies in those policies. *Id.* ¶ 14. Plaintiffs also assert that Meta "know[s] that precise geolocation data" is "sensitive," and "states in its Business Tools Terms" that developers "may not share data" that is "sensitive" with Meta. *Id.* ¶ 11. On that basis, Plaintiffs allege Meta was on "inquiry notice" that the information was sent without user consent. *Id.* ¶ 12.

## III.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements." *Id.* at 555. "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

## IV.    ARGUMENT

### A.    Plaintiffs Do Not Cure The Deficiencies The Court Identified In Their CDAFA And Pen-Register Claims

#### 1.    Plaintiffs' CDAFA Claim Still Fails Because Plaintiffs Still Do Not Allege Meta Knew It Lacked Permission To Access The Data

Plaintiffs' TAC fails to cure the defect this Court identified in dismissing Plaintiffs' CDAFA claim—namely, that Plaintiffs failed to allege that Meta is "aware both that [it is] using data or accessing a computer *and* that [it is] doing so without permission." Dkt. 52 at 7. The Court granted Plaintiffs leave to amend "to attempt to allege additional facts from which a plausible inference could be drawn that Meta was aware that its use and access was without permission." *Id.* at 9. But the TAC includes virtually no new facts on this topic. Instead, Plaintiffs advance a

different, sweeping theory of "knowledge": that Meta must have known it lacked permission to receive any location or IP address data because Meta did not *affirmatively check* the privacy policy of every single developer that used code from Meta's SDKs to ensure each obtained sufficient consent. TAC ¶¶ 12-13. Plaintiffs assert that had Meta done so, it would have known that such policies were "clearly deficient." *Id*. ¶ 12. That is wrong several times over.

As an initial matter, this Court already recognized that the Nextdoor and MobilityWare "privacy policies *do* disclose that user geolocation data may be shared with third-party advertising partners, with MobilityWare even specifically naming Facebook." Dkt. 52 at 7-8; *see supra* at 3-4. If Meta reviewed these policies, as Plaintiffs now claim was required, it would have every reason to believe it *was* receiving this information with permission. That forecloses Plaintiffs' new theory.

In any event, Plaintiffs' theory is wrong as a legal matter. Plaintiffs turn the "knowledge" requirement on its head by seeking to penalize Meta for *not* knowing the content of tens of thousands of privacy policies. Plaintiffs suggest that Meta was on "inquiry notice" of the possibility of lack of consent, because Meta's Business Tools Terms prohibit third parties from sending "sensitive information" to Meta, which, in Plaintiffs' view, includes the geolocation data allegedly sent here. TAC ¶¶ 11, 12, 43, 81. But inquiry notice is not sufficient for "knowledge" under the statute. A defendant acts "knowingly" only when it has "knowledge that *the facts exist* which bring the act or omission within" a penal provision. Cal. Penal Code § 7(b)(5) (emphasis added); *see also In re A.L.*, 38 Cal. App. 5th 15, 21-22 (2019) (differentiating between "[a]ctual knowledge" and "constructive knowledge under a criminal negligence standard"). Moreover, Plaintiffs' "inquiry notice" theory makes no sense. Whether information is *sensitive* and whether it is sent without consent from the user are two different questions. An app developer could secure consent from its users to send third parties certain data, even if Meta separately told the developer that Meta did not want that data. Accordingly, purported receipt of "sensitive" data would not put Meta on notice that it was receiving data sent *without permission*.[7]

---

[7] The premise that geolocation data falls within Meta's prohibitions on sending "sensitive" information is also inconsistent with Plaintiffs' allegation that Meta's statement to third-party developers that it may receive "location … information" should be read to include precise geolocation information. TAC ¶ 7. This underscores that Plaintiffs' allegations that Meta received precise geolocation data are wholly speculative.

Plaintiffs also invoke "willful blindness," *see* TAC ¶ 14, but they offer no allegations that could meet that high bar. Plaintiffs' own case explains that willful blindness requires "*deliberate* actions to avoid confirming suspicions" of unlawfulness. *United States v. Heredia*, 483 F.3d 913, 918 n.4 (9th Cir. 2007). But Plaintiffs do not show that Meta had any "suspicions" that it was receiving data from Nextdoor or MobilityWare without user consent, let alone that it deliberately avoided "confirming" lack of consent. *Id*. To the contrary, Meta took deliberate steps to ensure developers *would* secure consent by contractually requiring them to "represent and warrant" that they had provided notice and had "permission[]" to share data. Ex. 16 at 1-2; Ex. 19 at 2.

Plaintiffs essentially read CDAFA—a criminal statute—to impose a freestanding obligation to ensure that no contractual partner ever shares any data without permission. That reading would radically expand the statute, which was "'enacted to combat computer crime and hacking.'" Dkt. 52 at 7 (quoting *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1020 (C.D. Cal. 2023)). Courts have rejected similarly overbroad interpretations. *See Teran v. Super. Ct.*, 112 Cal. App. 5th 371, 383-84 (2025), *reh'g denied* (July 16, 2025), *review denied* (Sept. 17, 2025) (rejecting effort to interpret CDAFA "to effectively operate as a non-disclosure agreement backed by criminal penalties"); *cf. Van Buren v. United States*, 593 U.S. 374, 394 (2021) (rejecting interpretation of federal CFAA that would "criminalize[] every violation of a computer-use policy"). This Court should reject Plaintiffs' unsupported "expansive interpretation," Dkt. 52 at 7, and again dismiss the CDAFA claim—this time with prejudice.

### 2.    Plaintiffs' Pen-Register Claim Still Fails For Multiple Reasons

Plaintiffs also fail to cure the deficiencies in their pen-register claim. A "pen register" is "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50. This Court dismissed Plaintiffs' pen-register claim because Plaintiffs did not allege facts showing that SDK code met that statutory definition. Dkt. 52 at 12. The TAC suffers from the same defects.

#### a.    Plaintiffs' geolocation data allegations are still insufficient.

This Court held that Plaintiffs failed to allege that the information the SDK code

purportedly sent was "used for 'dialing, routing, addressing, or signaling'" in connection with the alleged communications. *Id*. As Meta explained, geolocation data collected when a person is playing a game or using an app is not "dialing, routing, addressing, or signaling information," because it is extraneous to the user's alleged communications with the app and plays no role in directing any communication. Plaintiffs' new allegations only confirm this: Plaintiffs allege that the geolocation data was "incidental" to their communications with the apps. TAC ¶¶ 6, 18, 24, 55. It thus could not have been used for routing or addressing those alleged communications.

Plaintiffs also now allege that "mobile phones … frequently depend on geolocation" data "to direct network traffic to servers in their geographic area," and that "mobile networks and applications must know the device's location to function properly." *Id*. ¶ 59. But those generic allegations do not show that Plaintiffs' geolocation information was used to route the alleged "wire or electronic communication" at issue here, Cal. Penal Code § 638.50(b)—namely, the communications between Plaintiffs' phones and the app servers. TAC ¶¶ 4, 6. Indeed, Plaintiffs do not even allege that *their* phones "depend on geolocation coordinates" to "direct network traffic," let alone for the alleged app communications. And Plaintiffs' vague allegation that apps "must know the device's location to function properly," *id.* ¶ 59, similarly fails to allege that geolocation data had any role in *routing* Plaintiffs' communications with the apps. It is also contradicted by the fact that enabling location services is optional, as Plaintiffs' own allegations indicate. *Id*. ¶¶ 19, 30; *see also* Ex. 3 at 14 (MobilityWare policy noting that geolocation information is collected only if a user enables location services); Ex. 10 at 3 (same for Nextdoor). Plaintiffs thus fail to cure the defect this Court identified in their geolocation allegations.[8]

> **b.** **Plaintiffs' IP address allegations cannot save their claim.**

Plaintiffs add allegations that IP addresses were sent to Meta, but those allegations cannot save their pen-register claim for at least two reasons.

*First*, as with geolocation information, Plaintiffs do not allege that IP addresses were "used

---

[8] Plaintiffs also still fail to plausibly allege that precise geolocation data was actually shared with Meta at all. The sources on which Plaintiffs rely mention only "location" generally, not precise geolocation. *See* TAC ¶¶ 7-8; Ex. 1. at 1. And the Meta blog post Plaintiffs cite refers only to "information associated with Facebook users," TAC ¶ 7, which Plaintiffs do not allege they are.

for 'dialing, routing, addressing, or signaling'" the alleged communications here. Dkt. 52 at 12. At most, Plaintiffs allege that IP addresses *can* constitute "dialing, routing, addressing, or signaling information" in some circumstances, because they may "guide[]" "data packet[s]" to a device. TAC ¶¶ 56-57. These vague allegations do not plausibly suggest that Plaintiffs' IP addresses were actually used to route or address any communications with Solitaire or Nextdoor. Rather, Plaintiffs again allege IP addresses were "incidental" to Plaintiffs' alleged communications here. *Id.* ¶ 20.

*Second*, and in any event, Plaintiffs cannot sustain their pen-register claim by pivoting to IP addresses because alleged "disclosure of IP addresses" does not "give[] rise to a privacy injury" sufficient for Article III standing. *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025); *see generally Popa v. Microsoft Corp.*, 153 F.4th 784, 792 (9th Cir. 2025) (explaining that privacy harm must be comparable to one of four common-law torts). IP addresses are merely information "associated with a device, not sensitive personal information." *Khamooshi*, 786 F. Supp. 3d at 1180. Accordingly, courts have long recognized that there is no reasonable expectation of privacy in an IP address. *See United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008). And location data that can be derived from IP addresses also is not private, because it is not "exact in pinpointing a location." *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020); *see Carolus v. Nexstar Media Inc.*, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025) (no privacy interest in "general location of [a] device"); *cf.* Ex. 10 at 4 (Nextdoor discloses that it "may derive your general location, such as city, state or geographic area, from your IP address").

Further, even if IP addresses could be deemed sensitive, Plaintiffs still could not establish any injury from disclosure of that information here, where both apps clearly disclosed that both they and third parties could collect IP address information. *See* Cal. Penal Code § 637.2 (right to sue only if person has been "injured"); Cal. Civ. Code § 3515 ("[He] who consents to an act is not wronged by it."). MobilityWare disclosed that it collects users' "IP address," and that "functions offered by other sources such as social networking sites like Facebook … may collect your IP address" as well. Ex. 3 at 4-5. And Nextdoor similarly disclosed that it would collect "IP address" information, and that such data collection might be "facilitated by cookies and similar technologies." Ex. 10 at 3-4. Plaintiffs thus could not reasonably have expected that third parties

would not receive their IP addresses. Accordingly, to the extent Plaintiffs now hinge their pen-register claim on collection of IP addresses, they fail to establish any injury to sustain the claim.

### c.     Plaintiffs still fail to allege that "contents" are not recorded.

The pen-register claim independently fails because Plaintiffs do not plausibly allege that the information allegedly sent to Meta was "*not* the contents" of the alleged communications. Cal. Penal Code § 638.50(b) (emphasis added). The Court should not "accept as true" the bare "legal conclusion," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), that the data at issue "was non-content information," TAC ¶ 117. Plaintiffs assert only that the transmission of geolocation data and IP addresses was "incidental" to their "communication[s]" with the apps. *Id.* ¶¶ 6, 24, 29, 31, 63. But that provides no facts showing that IP address or geolocation information was dialing, routing, addressing, or signaling information for those communications, as opposed to "contents." As the Court explained, if "Plaintiffs' cell phones periodically sent their geolocation information to the app developers as a standalone message," that "would appear to be the content of the underlying communication." Dkt. 52 at 12. Plaintiffs' reference to "incidental" transmission is fully consistent with that scenario. Plaintiffs thus fail to allege facts showing that contents were not transmitted.

### d.     Plaintiffs' claim independently fails because the SDKs are not alleged to function as pen registers.

Plaintiffs' allegations fail to show that SDK code meets the definition of a pen register for yet another reason. Under the statute, pen registers record specified information (information used to route a communication to its destination) that is "transmitted *by* an instrument or facility" in connection with the communication. Cal. Penal Code § 638.50(b) (emphasis added). But devices or processes that simply collect addressing information *about* the "instrument or facility" on which the pen register is installed do not qualify. *Id*. The statutory structure reinforces this reading. The statute prohibits installation of "a pen register or a trap and trace device" without a court order, Cal. Penal Code § 638.51, and defines "trap and trace device" as a device that captures "impulses that identify the *originating* number or other dialing, routing, addressing, or signaling information reasonably likely to identify the *source* of" a communication, *id.* § 638.50(c) (emphasis added). Read together, the pen register and trap-and-trace provisions thus allow law enforcement to collect information about all devices a target communicates with: devices the target sends

communications *to* ("information transmitted by" the target) and devices from which the target *receives* communications ("incoming" impulses), respectively. Cal. Penal Code § 638.50(b), (c); *see United Riggers & Erectors, Inc. v. Coast Iron & Steel Co.*, 4 Cal. 5th 1082, 1090 (2018) (statutory text must "'be read in the context of the provision as a whole'" and "the statutory scheme as a whole" (citation omitted)). The statute does not, however, cover devices that capture identifying characteristics of the target's *own* device. That reading accords with the legislative history, which explained that the pen register and trap-and-trace provisions would allow law enforcement to track "incoming" and "outgoing" phone numbers, in order "to track which people in an investigation are communicating with one another." Bill Analysis, Assemb. B. 929, Reg. Sess., at pp. T-U (Cal. Apr. 7, 2015); *see, e.g.*, *Camacho v. DG Premium Brands, Inc.*, No. 24STCV21672, Order at 2-3 (Cal. Sup. Ct. Apr. 17, 2025). Accordingly, devices that collect data about the device on which the "pen register" is purportedly installed, like the device's own location or IP address, are not covered by the statutory definition.[9] Because that is all Plaintiffs allege the SDKs do, their pen-register claim fails.

**B.    Plaintiffs' Pen-Register And CDAFA Claims Also Fail Because Plaintiffs Do Not Allege That Meta Engaged In The Conduct Those Statutes Prohibit**

**1.    Plaintiffs Do Not Allege That Meta "Installed" Or "Used" SDK Code**

Section 638.51 applies only to those who take the affirmative act of "install[ing] or us[ing]" a covered device. Cal. Penal Code § 638.51(a). But Plaintiffs do not allege that *Meta* took any such action. To the contrary, Plaintiffs acknowledge that *app developers* are the ones who "install" or "use" SDK code, as they allege that Meta "encourages third-party application developers to incorporate" SDK code into their apps. TAC ¶ 61; *see also* Dkt. 52 at 6 (acknowledging that "third-party developers must install the SDK onto their applications"). Allegations that Meta "provides" SDK code, TAC ¶ 101, "encourages" someone else to use that code, *id.* ¶ 61, and that it "used … data" the apps allegedly sent via SDK code, *id.* ¶¶ 20, 31, do not amount to allegations that Meta

---

[9] In *Shah v. Fandom, Inc.*, this Court rejected the argument that the statute should be limited to pen registers that "operate the same way as a traditional phone pen register." 754 F. Supp. 3d 924, 929 (N.D. Cal. 2024). Meta's argument rests not on how traditional pen registers operated, but on statutory text and structure. *See United States v. Kittson*, 161 F.4th 619, 627 (9th Cir. 2025) (statute should be construed "as a symmetrical and coherent regulatory scheme"); *Move Eden Hous. v. City of Livermore*, 114 Cal. App. 5th 1282, 1293 (2025), *review denied* (Jan. 14, 2026) (similar).

itself installed or used SDK code. Indeed, the very source Plaintiffs rely on in their complaint, TAC ¶ 7 & n.1, explains that "[d]evelopers determine what events to send to Facebook." Ex. 1 at 2. In other words, developers customize the code (the alleged "pen register") for their apps. That is not sufficient to allege that Meta used a pen register, which requires "active employment"— particularly in a criminal statute. *Bailey v. United States*, 516 U.S. 137, 143 (1995).

While this Court concluded, in analyzing the CDAFA claim, that Meta used and accessed *data*, Dkt. 52 at 6, the pen-register statute requires that Meta used or installed the alleged *pen register* itself, not data. The Court also relied on CDAFA's specific definition of "access"; the pen-register statute contains no such definition. The terms "install" and "use" must therefore be given a "'plain and commonsense meaning' 'in the context of the statutory framework as a whole.'" *People v. Orozco*, 9 Cal. 5th 111, 117-18 (2020). In the context of this criminal statute, those terms require active, affirmative conduct. Because Plaintiffs cannot allege that Meta "install[ed] or use[d]" SDK code, the pen-register claim should be dismissed. Cal. Penal Code § 638.51(a).

### 2. Plaintiffs Do Not Allege That Meta "Accessed" A Computer Or Computer Data

Plaintiffs' CDAFA claim fails for similar reasons. Each of the subsections Plaintiffs invoke—Section 502(c)(1), (c)(2), and (c)(7)—penalizes "knowingly access[ing]" computer data or a computer. The Court concluded in its prior order that Meta "access[ed]" data within the meaning of CDAFA because its SDK was "developed" to share data and "Meta's SDKs allegedly 'cause' third-party applications to 'output' user data." Dkt. 52 at 6.[10]

Meta respectfully disagrees that those allegations suffice, and asks the Court to reconsider, especially in light of the lenity and fair-notice principles described below and not addressed in the Court's prior opinion. The fact that *code* originally developed by Meta allegedly caused outputs does not mean that Meta itself undertook that action. SDK code can cause outputs only if an *app developer* incorporates the code into its app. Because the statute penalizes only the "person" who accesses data or a computer, Cal. Penal Code § 502(c), the relevant question is who controlled the code and configured it to send the data at issue here. As explained, that person is the app developer,

---

[10] This Court also referred to "using" data, but use of data alone cannot establish liability—each subsection Plaintiffs invoke requires knowing access. *See* Cal. Penal Code § 502(c)(1), (2), (7).

not Meta. Under Plaintiffs' contrary reading, Meta could be criminally liable for "access[ing]" or "us[ing]" data based entirely on the actions of an independent third party—the app developer who incorporates and configures the SDK code. Principles of lenity and constitutional avoidance preclude such a sweeping interpretation. *Infra* at 14-15. Further, subsection (c)(7) penalizes only knowingly accessing "a[] computer, computer system, or computer network," Cal. Penal. Code § 502(c)(7), so even if Plaintiffs alleged "'access' by Meta of … *data*," Dkt. 52 at 6 (emphasis added), that would not state a claim under that section.[11]

### C.     Under Plaintiffs' Erroneous Interpretations, These Statutes Are So Capacious They Fail To Provide Fair Notice

Plaintiffs' theory that Meta is liable under CIPA and CDAFA for mere *receipt* of information is far too capacious. If those statutes in fact covered Meta's alleged conduct of receiving information through a third party's use of code that Meta created and made generally available, they would be unconstitutional, as they do not give "fair notice" of such a broad sweep. *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012); *see also Butcher v. Knudsen*, 38 F.4th 1163, 1178 (9th Cir. 2022) (law unconstitutionally vague where it gave individuals no "reasonable opportunity to know" their activities were covered (citation omitted)). Meta could not have known that such receipt of information, sent by someone else, could constitute *Meta* "install[ing] or us[ing] a pen register," Cal. Penal Code § 638.51, or "[k]nowingly access[ing]" a computer or computer data without permission, *id.* § 502(c)(2). *See Canyon Ferry Rd. Baptist Church of E. Helena, Inc. v. Unsworth*, 556 F.3d 1021, 1029 (9th Cir. 2009) (law unconstitutionally vague where liability turned on factors beyond party's control); *supra* at 13-14.

As one court has observed, "it's [now] often borderline impossible to determine whether a defendant's online conduct fits within the language of [CIPA]." *Doe v. Eating Recovery Ctr. LLC*, 2025 WL 2971090, at *1 (N.D. Cal. Oct. 17, 2025). Plaintiffs' broad interpretations would make any company that develops analytics technology potentially liable under criminal statutes. To the extent there is ambiguity, this Court should read CIPA and CDAFA narrowly under principles of lenity and constitutional avoidance. *See Harrott v. Cnty. of Kings*, 25 Cal. 4th 1138, 1154 (2001)

---

[11] Meta also respectfully disagrees with the Court's holdings rejecting Meta's other CDAFA arguments, but will not repeat those arguments here. *See* Dkt. 52 at 10-11.

(lenity); *People v. Super. Ct.*, 18 Cal.5th 838, 868 (2025) (constitutional avoidance).

### D.    Plaintiffs' Invasion Of Privacy Claim Still Fails

The Court dismissed Plaintiffs' invasion of privacy claim because Plaintiffs failed to allege that Meta knowingly collected data without user consent, and thus did not allege "highly offensive" conduct. Dkt. 52 at 13. The TAC fails to cure that deficiency. *Supra* at 6-8. Further, even if Plaintiffs could allege knowledge, they still fail to allege egregious conduct given that Meta merely *received* data that third-party app developers chose to send; it did not act affirmatively—much less deceptively—to improperly obtain that data in the first instance. Dkt. 52 at 13; *see In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (transmission of geolocation information not highly offensive even if done without consent); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (requiring "blatantly deceitful" conduct or other bad acts); *Hubbard v. Google LLC*, 2024 WL 3302066, at *8 (N.D. Cal. July 1, 2024) (similar).

### E.    Plaintiffs' Unjust Enrichment Claim Still Fails

"Because [Plaintiffs] 'have not stated a claim … for any unlawful conduct, they have also failed to state an unjust enrichment claim.'" Dkt. 52 at 14 (quoting *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 849 (N.D. Cal. 2024)). Plaintiffs do not plausibly allege that Meta was "*unjustly* enriched at [their] expense," *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) (emphasis added), through "mistake, fraud, coercion, or request.'" *Russell v. Walmart, Inc.*, 680 F. Supp. 3d 1130, 1133 (N.D. Cal. 2023) (citation omitted). Plaintiffs allege no misrepresentation by Meta, instead pointing only to their "belie[f]" that apps would not share their location. TAC ¶¶ 22, 33. Plaintiffs also fail to allege that any benefit to Meta was at their "expense," because they do not (and could not plausibly) allege that they expected to be "compensated" for their data. *Marden v. LMND Med. Grp., Inc.*, 2024 WL 4448684, at *5 (N.D. Cal. July 3, 2024) (Lin, J.). Plaintiffs therefore fail to allege that they "'retain a stake in the profits garnered,'" as required. *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 834-35 (N.D. Cal. 2020).

### V.    CONCLUSION

Plaintiffs had an opportunity to cure the defects in their prior complaint, and they failed to do so. Meta respectfully requests dismissal of the TAC with prejudice.

Dated: March 11, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By */s/ Melanie M. Blunschi*
   Melanie M. Blunschi (Bar No. 234264)
    *melanie.blunschi@lw.com*
   Kristin Sheffield-Whitehead (Bar No. 304635)
    *kristin.whitehead@lw.com*
   Dianne Kim (Bar No. 348367)
    *dianne.kim@lw.com*
   505 Montgomery St., Suite 2000
   San Francisco, CA 94111
   Telephone: +1.415.391.0600

   Margaret A. Upshaw (*pro hac vice*)
    *maggie.upshaw@lw.com*
   Ruth Hirsch (*pro hac vice*)
    *ruth.hirsch@lw.com*
   555 Eleventh Street, NW, Suite 1000
   Washington, D.C. 20004
   Telephone: +1.202.637.2200

   *Attorneys for Defendant*
   *Meta Platforms, Inc.*